UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**RAILEY M. PETERS**                                              **CIVIL ACTION**

**VERSUS**                                                        **NO: 11-1580-SS**

**SOCIAL SECURITY**
**ADMINISTRATION**

### ORDER

For the reasons stated below, the motion of the defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), to dismiss the complaint of the plaintiff, Railey M. Peters ("Peters"), (Rec. doc. 40) is granted.

### BACKGROUND

Peters, an African-American female, is employed at the Commissioner's office in Metairie, Louisiana. On November 24, 2009, she contacted an Equal Employment Opportunity Counselor. On March 8, 2010, she filed a formal complaint. On March 3, 2011, a decision in favor of the agency was issued by an Administrative Judge. Peters filed a complaint and an amended complaint without the assistance of counsel. Rec. docs. 1 and 4. The Commissioner's motion to dismiss improperly joined defendants was granted. Rec. doc. 26. Counsel for Peters enrolled. Rec. doc. 33. The parties consented to proceed before a Magistrate Judge. Rec. doc. 36. On July 17, 2012, the Commissioner moved to dismiss the complaint and sought summary judgment. Rec. doc. 40. Peters filed an opposition. Rec. doc. 41. The Commissioner filed a reply. Rec. doc. 45.

## STANDARD FOR RULE 12(b)(6)

> We review de novo the district court's order on a motion to dismiss for failure to state a claim under Rule 12(b)(6). The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

## AMENDED COMPLAINT

The amended complaint restated all of Peters' allegations against the Commissioner. Rec. doc. 1.[1] No *pro se* litigant is entitled to special treatment beyond the broad reading of the unskilled pleadings. Jarrell v. Tisch, 656 F. Supp. 237, 239 (D.D.C. 1987). Because of the issues raised by the Commissioner, Peters' amended complaint is described at some length.

In paragraphs 1 through 13, Peters addresses jurisdiction, venue, the parties and the administrative proceedings. In paragraph 8, Peters identifies Michael Hertzig, the chief administrative law judge in the Metairie office, Erin Dufour, a hearing office director in the Metairie office, and Joan Parks-Saunders, the regional chief administrative law judge in Dallas as defendants. They were dismissed as defendants. Rec. doc. 26. Peters' prayer for relief is found in paragraphs 95-102.

**A.   COUNT ONE - Age Discrimination (Paragraphs 14 -52)**.

Peters identifies herself as a 54-year old black female career employee in the position of Legal Assistant/Senior Case Technician with 13 years of service in the Metairie office. Paragraph

---

[1] The Commissioner incorrectly refers to the Amended Complaint as prepared by counsel for Peters. Rec. doc. 40 at 9.

16. She is a member of a protected class. Paragraph 17. Her main duties are providing legal and technical support to administrative law judges for cases arising under the Social Security Act ("SSA"). She performed all duties and followed instructions. Paragraph 18.

### 1. Reassignment of Job Duties to Younger Workers.

In 2008 and 2009, Hertzig, Dufour and Parks-Saunders dismantled the job duties for Peters' position and gave them to younger new hires. Paragraphs 20-22. Younger new hires were assigned to perform her duties because Hertzig, Dufour and Parks-Saunders contended the new hires were faster. Paragraph 24. They disbanded proper electronic case development procedures. Paragraph 23. They divided responsibilities for preparation of case files and imposed an assembly line approach. This eliminated case file ownership. Paragraphs 25-27.

### 2. Performance Evaluations Lowered.

In November 2009, Hertzig, Dufour and Parks-Saunders: (1) blamed Peters for case errors which she did not make; (2) lowered her performance evaluation for unknown reasons; (3) held her and other older employees to a higher standard than younger employees; (4) sought to diminish her work skills so they could deny her opportunities for training and promotion; and (5) set the ratings for her performance evaluations instead of Peters' supervisor. Paragraphs 28-31.

### 3. Writing Dismissal Decisions.

In December 2009, Peters asked Dufour if she could resume writing dismissal decisions since it was part of her job description. Dufour told her "no." Paragraph 32. Dufour began writing dismissal decisions because she believed that she was better and faster at the job than the senior case technicians. Paragraph. 33.

### 4. <u>Receptionist</u>.

Beginning in 2006, Hertzig, Dufour and Parks-Saunders refused to allow Peters and others to work 100% of the time at tasks within their job descriptions. They required Peters and others to perform lower grade job duties, for example answering the phone and mailing out decisions. Paragraph 37. On April 22, 2008, they advertised a job vacancy for a receptionist but did not fill the position. Paragraph 35. In 2009, Peters asked Dufour if a receptionist could be hired so that the senior case technicians could return to their main duties. Dufour said there were no plans to hire a receptionist. Paragraph 36.

On June 15, 2010, Peters' supervisor, Burell, emailed a union official, David Singleton, and reported that senior case technicians were reassigned work within their job descriptions and the Metairie office was moving to accommodate their work in the scheduling and pre-development components. Paragraph 39.

### 5. <u>Student Hiring.</u>

In June 2008, Hertzig hired Alexzina Taylor, an African-American Loyola University student. Paragraph 41. In 2009, he hired Matthew Glodowski and Adam Bosso, Caucasian Loyola students. All three students were: (1) substantially younger than Peters (Paragraphs 41 and 44); (2) exempted from receptionist duties and remedial tasks which Peters and others were required to perform (Paragraphs 42 and 46); (3) given training opportunities which were denied to Peters and others (Paragraphs 42 and 45); and (4) trained to write disability decisions (Paragraphs 41 and 44). Hertzig is an alumnus of Loyola and recruited Loyola students. Paragraph 43.

Taylor referred to herself as Hertzig's law clerk. Paragraph 41. Hertzig is waiting to move Glodowski into an attorney advisor slot after he passes the bar exam. Paragraph 47. Bosso left the

agency and works for Matt Greenbaum, a disability lawyer and friend of Hertzig.  Paragraph 48.  Hertzig hears cases where Bosso is representing the claimant.  Paragraph 49.

### 6. Computer.

Since 2009, Peters reported numerous problems with her office computer and applications.  Union files and a directory disappeared from her computer.  Paragraph 38.

### 7. Damages for Count One.

Peters described her damages for Count One in paragraphs 50-52.

## B. COUNT TWO - Race Discrimination (Paragraphs 53-94).

### 1. Decision Writer.

The position of decision writer carries the titles of Attorney Advisor and Paralegal Analyst.  Both titles carry the same job duties.  With minimal instructions, they write disability hearing decisions.  Paragraph 71.  Writing samples are not required for Paralegal Analysts.  Paragraph 72.  The last announced Paralegal Analyst position at the Metairie office was in 2004.  Peters was qualified for this position.  Paragraph 55.  She applied for it, but did not get it.  Paragraph 73.  Peters and others were rejected eight times for promotion to Paralegal Analyst.  Paragraph 75.

In 2007, Hertzig told Peters that decision writer training under a mentor would be available in 2008 and asked if she would be interested.  The implication was that all senior case technicians would be eligible to apply for the training.  Paragraph 56.  On April 10, 2009, Peters emailed Hertzig and reminded him of the 2007 conversation.  He denied ever making the promise of writer training.  Paragraph 65.

In 2008, Hertzig, Dufour and Parks-Saunders began to systematically exclude a group of people, including Peters, from becoming Paralegal Analysts at the Metairie office.  Paragraph 53.

Although they could have done so, they never announced a Paralegal Analyst position.  Paragraph 74.  Other offices regularly announced and filled Paralegal Analyst positions.  Paragraph 74.  They eliminated a Paralegal Analyst position by transferring in a Caucasian husband and wife team.  The wife was assigned to report to the New Orleans office, which blocked a Paralegal Analyst position from opening.  Paragraph 61.

In September 2008, Hertzig told employees at a meeting to spruce up their applications as jobs were forthcoming.  He invited them to leave the Metairie office and offered to help them transfer out of the office.  Paragraph 59.

In 2009 and 2010, Hertzig, Dufour and Parks-Saunders replaced the Paralegal Analyst positions that became vacant with Attorney Advisors.  Paragraphs 57 and 76.  They hired eight attorneys (one African-American and seven Caucasians) to write disability decisions under the Attorney Advisor job title.  Paragraph 66.  Since 2008, they preferred Attorney Advisors as the decision writers.  Paragraph 77.  They purported to hire the Attorney Advisors under a business necessity stipulation.  Paragraph 78.  The new Attorney Advisors are not familiar with the SSA policies and rely on Peters and other legal assistants.  Paragraph 79.  All of the attorneys hired by Hertzig in 2009 attended Loyola.  Paragraph 83.  From 2008 through 2010, Hertzig, Dufour and Park-Saunders hired and trained law students to write disability hearing decisions.  Paragraph 58.  In 2009, Hertzig preferred an attorney for an Attorney Advisor position who worked with Hertzig's wife at a law office.  Paragraph 60.

Hertzig, Dufour and Parks-Saunders caused a disparity for Peters and others, who were qualified as Paralegal Analysts, by removing career ladder advancement positions for legal assistants and senior case technicians.  Paragraphs 81 and 82.  They discriminated against Peters and others,

who suffered disparate impact, when they purported to use a facially neutral policy of business necessity to hire friends and associates. Paragraph 80.

On April 18, 2008, the Dallas office of personnel management advertised for an Attorney Advisor position on a government website and hired Raquel Pettigrew, a young African-American female. Paragraph 62. On January 23, 2009, Dufour sent an office wide email that there was authority for an Attorney Advisor position in the Metairie office. Dufour reported that the position could be found on websites and the Times-Picayune. Paragraph 64. In January 2010, Hertzig, Dufour and Parks-Saunders advertised Attorney Advisor positions on a non-governmental web site aimed at attorneys. Paragraph 63.

    **2.**    <u>**May 22, 2009**</u>.

Hertzig only communicated with Peters through email. He did not have an open door policy. His emails contained negative and sarcastic responses. Paragraph 68. On May 22, 2009, Peters emailed Hertzig to inquire about decision writer jobs. He responded sarcastically with "?????" as the answer. Paragraph 67. On that same day, he emailed Peters and said, "I do not know who 'informed' you 'there would be other available openings for writers coming soon.' " Paragraph 69. He emailed her that he did not understand her assertion that since the last month, there were numerous openings for decision writers at the Metairie office. He was aware of a Paralegal Analyst decision writer position available in the New Orleans office and asked if she had applied for it. Paragraph 70.

    **3.**    <u>**Erin Dufour**</u>.

In 2008, While Dufour stood in the doorway of Peter's then supervisor, Gina Locascio, and discussed work issues, she made kicking gestures at Peters. Paragraph 85. Before Peters filed

grievances, Dufour rarely spoke to her. Dufour's only communications were negative emails concerning work directives. Paragraph 87. In 2010, Dufour refused Peters' reasonable requests for a computer screen, a partition to block the sun, seating arrangements and adequate heating and cooling. Paragraph 91.

### 4. Union Activity.

In January 2008, Peters testified at an EEO hearing. After she became a union steward in March 2008, Hertzig, Dufour and Parks-Saunders targeted her for abuse and harassment. Paragraph 84. On June 12, 2009, Peters notified management that a union official was visiting and requested a room for a meeting. Hertzig responded by questioning her authority to send an email to management. Paragraph 88. On November 12, Hertzig came to Peters' desk and criticized her for her union work in front of her co-workers. Paragraph 90.

### 5. Other.

In 2009 and 2010, Hertzig and Dufour harassed and intimidated Peters when they bypassed her for video hearing duties. Paragraphs 34 and 89. In 2009, Hertzig falsely reported to Peters' supervisor that Peters had deliberately bumped him and instructed the supervisor to report the incident to Parks-Saunders. Paragraph 86. In January 2010, Hertzig and Dufour stood by garbage cans and refused to sit next to Peters and another African-American employee during a training session. Paragraph 92.

### 6. Damages for Count Two

In Paragraphs 93, Peters describes her damages for Count One.

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

There are two requirements for filing a Title VII action in federal court: (1) the complaint must be filed within the time allotted by Title VII and (2) the complainant

      must first have exhausted her administrative remedies. Failure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case; it is the well-settled law of this circuit that each requirement is a prerequisite to federal subject matter jurisdiction.

Tolbert v, United States, 916 F.2d 245, 247 (5th Cir. 1990). The Commissioner argues that Peters failed to exhaust her administrative remedies for many of the allegations found in her amended complaint. Rec. doc. 40 at 7-9. Although Peters describes this as one of the Commissioner's three arguments (Rec. doc. 41 at 1), she does not respond to it.

      Before the Administrative Judge, Peters made nine claims that she was harassed by the agency on the basis of her race and age. Following each claim is a statement of whether it is found in the amended complaint and, if so, where.

1. From October 2009 through March 2010, management denied her the opportunity to sit in and provide assistance in the hearings process as part of her job.

   See Count II of the Amended Complaint, Part No. 5 - Other - Paragraphs 34 and 89.

2. In March 2010, she observed a change in behavior towards her by certain vocational experts since she had a strained relationship with Hertzig and Dufour.

   There is no reference to this issue in the Amended Complaint.

3. On January 11, 2010, she observed that Hertzig and Dufour refused to sit by her and another African-American during an Electronic Business Process training, actions which she stated were racially motivated.

   See Count II of the Amended Complaint, Part No. 5 - Other - Paragraph 92.

4. On December 18, 2009, Burrell, her supervisor, needlessly questioned her regarding her allegedly bumping into Hertzig one morning, a situation that she stated never occurred.

   See Count II of the Amended Complaint, Part No. 5 - Other - Paragraph 86.

5. On or about December 12, 2009, Hertzig and Dufour denied her career advancement opportunities by advertising a decision writer positions for "Attorneys" only through private job networks.

   See Count II of the Amended Complaint, Part No. 1 - Decision Writer - Paras. 63 and 64.

6. On November 12, 2009, her manager deemed her usage of her personal laptop computer at work illegal and did not permit her to use it at work, although she had used it at work for prior years during breaks and lunch times.

   There is no reference to this issue in the Amended Complaint.

7. On May 22, 2009, Hertzig responded to her request to speak with him regarding training opportunities by sending her an email with five question marks (?????).

   See Count II of the Amended Complaint, Part No. 2 - May 22, 2009 - Paragraph 67.

8. Peters received negative feedback from Hertzig and Dufour, but they allegedly refused her request for one-on-one communication with them; instead they only communicated with her through emails.

   See Count II of the Amended Complaint - Part No. 2 - May 22, 2009 - Paragraph 68 and Part No. 3 - Erin Dufour - Paragraph 87.

9. Hertzig treated her with coldness, tried to interfere with her union activities, and made condescending remarks to her by emails, including an email that contained illicit jargon, which she perceived as cursing at her.

   See Count II of the Amended Complaint - Part No. 2 - May 22, 2009 - Paragraphs 67-69 and Part No. 4 - Union Activity - Paragraphs 84, 88 and 90.

Rec. doc. 4 (Exhibit A at 1-2).

Numerous portions of the Amended Complaint are not included in Peter's EEOC complaint or in the March 3, 2011 decision by the Administrative Judge. The references in the Amended Complaint against Park-Saunders illustrate changes made by Peters from the EEOC Complaint. While Claim Nos. 2, 3, 5 and 8 refer to Hertzig and Dufour, there is no mention of Parks-Saunders in any claim to the EEOC.

The March 3 decision responds to Peters' contention that management officials (Hertzig and Dufour) denied her career advancement opportunities (Claim No. 5).

> The agency selected employees in 2008 and 2009 for the aforementioned training programs that were of the same race as the Complainant and within a few years of her age. Based upon these facts, the Complainant has failed to establish a *prima facie* case of age and race discrimination as to this particular incident. It is also observed that the responsible management officials at the ODAR [Hertzig and Dufour] were not responsible for selecting the candidates for programs. The responsible management officials at the ODAR submitted the Complainant's application for the training programs, as they did with other candidates.

Rec. doc. 4 (Exhibit A at 15).[2]

With respect to Claim Nos. 1 and 5, the March 3 decision concluded that Peters failed to show as a matter of law that the responsible management officials (Hertzig and Dufour) harassed her on the bases of race and age by denying her career opportunities. Id. at 16. The March 3 decision states:

> The gravamen of the Complainant's argument is that responsible management officials intentionally advertised for Attorney-Advisor positions, rather than Paralegal Specialists when vacancies arose, as a means of hiring younger workers of a different race than the Complainant. Apparently, the Complainant could qualify for a Paralegal Specialist position that would allow for an upward career trajectory. However, as the Complainant admits, she could not qualify for an Attorney Advisor position. The Complainant contends there is no difference between the

---

[2] ODAR refers to the Louisiana Office of Disability Adjudication and Review in Metairie, Louisiana.

>responsibilities and duties of a Paralegal Specialist and an Attorney Advisor position, and that the "only difference" is that an Attorney-Advisor must be a member of a State Bar.
>
>**The record, however, establishes that the Regional Office, not the ODAR, sets the staffing needs for the ODAR.** The responsible management officials at the ODAR had no authority to determine whether to fill a vacancy by advertising either for an attorney-advisor or a paralegal specialist. The responsible management officials only had the authority to select candidates for the vacant positions. As the Complainant observes, she could not qualify for the attorney-advisor position, so there is no issue as to non-selection for the position.

Id. at 16-17 (emphasis added)(citations omitted).

The March 3 decision also resolved the issue of pretext in a similar manner. Peters did not establish a *prima facie* case of disparate treatment because she did not show that similarly situated individuals outside of her race, or substantially younger than she were treated more favorably. The March 3 decision states:

>The Complainant did not identify any comparators in her case, with the exception of employees hired as Attorney Advisors. However, as noted above, the Complainant could not qualify for those jobs, so the comparators are not similarly situated.

Id. at 17.

In her Amended Complaint, Peters attempts to evade the effect of the analysis in the March 3 decision by adding the regional chief administrative law judge in Dallas, Parks-Saunders, as a responsible management official. Peters did not present any administrative complaint against Parks-Saunders and there is no reference to Parks-Saunders in the March 3 decision. Peters failed exhaust her administrative remedies against: (1) Park-Saunders (Paragraph 8); (2) the claim concerning the reassignment of job duties to younger workers (Count I-Part 1 [Paragraphs 20-22]); (3) the claim concerning the lowering of her performance evaluations (Count I-Part 2 [Paragraphs 29-31]); (4) the December 2009 request to resume writing dismissal decisions (Count I-Part 3 [Paragraphs 32-

33]); (5) the claim concerning receptionist duties (Count I-Part 4 [Paragraphs 35-37 and 39]); and (6) the claim concerning problems with her computers and office conditions (Count I-Part 6 [Paragraph 38] and Count II-Part 3 [Paragraph 91]).

## ADVERSE PERSONNEL ACTIONS

The Commissioner contends that: (1) Title VII, 42 U.S.C. §2000e-16(a), is the exclusive remedy for federal employment discrimination; and (2) federal employees have the right to be free from discrimination-based adverse "personnel actions." Peters contends that she has alleged adverse personnel actions because: (1) she was denied training opportunities (Rec. doc. 41 at 5); (2) she was prevented from performing the full duties of her job description (Id. at 6); (3) she was required to perform the functions of lower grade employees (Id. at 9); (4) she was passed over for duty assignments in favor of younger employees (Id. at 9); (5) complex cases were removed from her responsibilities (Id. at 9); and (6) her performance evaluations and appraisals were lowered (Id. at 9).

In Dollis v. Rubin, 77 F.3d 777 (5th Cir. 1995), the Fifth Circuit stated:

> Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. *See Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.) (en banc) (noting that Title VII discrimination cases have focused upon ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981).

Id. at 781-82. In Hagan v. Walker, 1998 WL 830641 (E.D.La.), the claims of an employee of the Corps of Engineers relating to the failure to provide adequate training and adverse performance appraisals were dismissed because they did not amount to adverse personnel actions. The plaintiff did not suffer any change in salary or benefits. Id. at *3. See also Lewis v. Glickman, 1997 WL 276084 (E.D.La.) (the claims of an employee of the Department of Agriculture regarding adverse

performance appraisals and forced leave were dismissed because they were not ultimate employment decisions).

Peters has not alleged any adverse employment actions. The claims made by Peters, for example her claim that she was denied training, are not ultimate employment decisions. Peters' Title VII claims must be dismissed.

### *PRIMA FACIE* CASE OF AGE OR RACE DISCRIMINATION

The Commissioner contends that Peters fails to allege a *prima facie* case of discrimination based on race under Title VII or age under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. The standard of proof for Title VII discrimination claims also applies to ADEA claims. Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004). The inquiry is whether the defendant intentionally discriminated against Peters. Id. While acknowledging that Peters is over 40 years old and is African-American, the Commissioner contends that Peters has otherwise not demonstrated a *prima facie* case of age or race discrimination.

In Count II-Part 1 (Decision Writer), Peters alleges that Hertzig, Dufour and Parks-Saunders discriminated against her on account of her race by replacing the Paralegal Analyst positions with Attorney Advisors. Paragraphs 57, 66 and 76-78. Peters contended that Attorney Advisor positions were used rather than the Paralegal Analyst positions because they could be filled with younger workers of a different race. Rec. doc. 4 (Exhibit A at 16-17). The Commissioner's regional office set the staffing needs for the Metairie office. Hertzig and Dufour had no authority to determine whether to fill a vacancy by advertising either for an Attorney Advisor or a Paralegal Analyst. Id.

at 17.[3] Peters cannot demonstrate that Hertzig and Dufour intentionally discriminated against her by using Attorney Advisor positions rather than Paralegal Analyst positions.

Peters cannot state a claim against Parks-Saunders, the regional chief administrative judge, because Parks-Saunders was not included in her EEOC complaint. It is noted, however, that Parks-Saunders is 58 and an African-American female. Rec. doc. 40 (Exhibit D). She is the same race as Peters and older than she. Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) ("[P]roof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision.").

## CONCLUSION

Peters failed to exhaust her administrative remedies for much of her amended complaint. She has not alleged any adverse employment actions. She cannot establish a *prima facie* case of age or race discrimination. The Commissioner's motion to dismiss will be granted. It is not necessary to consider his motion for summary judgment.

IT IS ORDERED that the Commissioner's motion to dismiss (Rec. doc. 40) is GRANTED.

New Orleans, Louisiana, this 10th day of September, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**

---

[3] "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).